IN THE COURT OF CRIMINAL APPEALS OF TENNESSEE
AT KNOXVILLE
January 21, 2016 Session

**HOWARD HAWK WILLIS v. STATE OF TENNESSEE**

**Appeal from the Criminal Court for Washington County**
**No. 40245     Jon Kerry Blackwood, Judge**

---

**No. E2015-00235-CCA-R3-ECN – Filed July 7, 2016**

---

The Petitioner, Howard Hawk Willis, appeals the Washington County Criminal Court's summary dismissal of his pro se petition for writ of error coram nobis. The Petitioner seeks relief from his two premeditated first degree murder convictions and the resulting sentences of death, arguing (1) the coram nobis court abused its discretion in summarily dismissing his petition without taking into account due process considerations; (2) the coram nobis court's grounds for dismissal were erroneous; and (3) his pro se petition satisfied the coram nobis pleading requirements and, to the extent that it did not, he should be granted an evidentiary hearing given the pro se nature of the petition. Upon review, we affirm the judgment of the coram nobis court.

**Tenn. R. App. P. 3 Appeal as of Right; Judgment of the Criminal Court Affirmed**

CAMILLE R. MCMULLEN, J., delivered the opinion of the court, in which NORMA MCGEE OGLE and ROBERT W. WEDEMEYER, JJ., joined.

Stephen Ross Johnson, Knoxville, Tennessee, for the Petitioner, Howard Hawk Willis.

Herbert H. Slatery III, Attorney General and Reporter; James E. Gaylord, Senior Counsel; and Anthony W. Clark, District Attorney General, for the Appellee, State of Tennessee.

**OPINION**

**Facts and Procedural History.** We have gleaned the following facts from the record in this case, this court's opinion in the Petitioner's interlocutory appeal, and this court's opinion and the record in the Petitioner's direct appeal. On October 11, 2002, the Petitioner was arrested pursuant to a federal warrant for violating the conditions of his release as to pending federal charges in New York. See State v. Howard Hawk Willis, No. E2012-01313-CCA-R3-DD, 2015 WL 1207859, at *58 (Tenn. Crim. App. Mar. 13,

2015), <u>direct death penalty transfer</u>, No. E2012-01313-SC-DDT-DD (Tenn. Apr. 1, 2015). In the declaration supporting the arrest warrant, Special Assistant United States Attorney Steven L. D'Alessandro asserted that there was probable cause to believe that "in and about September and October of 2002" the Petitioner committed credit card fraud, which violated the Petitioner's bail conditions in his federal case. In the declaration, D'Alessandro requested that the Petitioner's bail status be terminated immediately and that he be remanded to the custody of the United States Marshal's Service pending trial. D'Alessandro explained that he had received information from a law enforcement officer that the Petitioner, knowingly and with the intent to defraud, had been using credit cards belonging to Samuel Thomas, the Petitioner's stepfather, who was missing and presumed dead, and that the issuing credit card companies had no records authorizing the Petitioner's use of these cards.

While in custody at the Washington County, Tennessee jail pursuant to the federal arrest warrant, the Petitioner confessed to his ex-wife, Wilda Willis, that he had killed Adam and Samantha Chrismer. <u>See</u> <u>id.</u> at *14. On October 23, 2002, he was charged in state court for these crimes. <u>See</u> <u>id.</u> at *50. Before the Chrismer murder case proceeded to trial, the Petitioner filed several suppression motions alleging that the confession and statements he made while incarcerated at the Washington County Jail were made in violation of the Fifth, Sixth, and Fourteenth Amendments. <u>See</u> <u>id.</u> at *40, *56-58. In his November 13, 2009 motion, the Petitioner claimed that his confession and statements should be suppressed because the federal arrest warrant was based on false and misleading evidence of his credit card fraud. The trial court denied these motions. <u>See</u> <u>id.</u> at *56-58.

After years of delay related to multiple changes in court-appointed counsel, the trial court held that the Petitioner had implicitly waived and forfeited his right to be represented by counsel, ordered that the Petitioner must proceed pro se at trial, and appointed advisory counsel. <u>See</u> <u>id.</u> at *2. The Petitioner brought an interlocutory appeal from the court's order that he had waived and forfeited his right to counsel, and this court affirmed the trial court's order. <u>See</u> <u>State v. Willis</u>, 301 S.W.3d 644, 645 (Tenn. Crim. App. 2009). The Petitioner's case proceeded to trial in June 2010. <u>See</u> <u>id.</u> at *2.

After hearing the proof presented at trial, the jury convicted the Petitioner of one count of premeditated first degree murder of Adam Chrismer, one count of premeditated first degree murder of Samantha Chrismer, and one count of first degree felony murder of Samantha Chrismer in the perpetration of a kidnapping. <u>See</u> <u>id.</u> at *34. At the sentencing hearing, as to the Petitioner's conviction for premeditated first degree murder of Adam Chrismer, the jury found the following aggravating circumstance beyond a reasonable doubt: the Petitioner knowingly mutilated the victim's body after death. <u>See</u> <u>id.</u> (citing T.C.A. § 39-13-204(i)(13) (Supp. 2002)). As to the Petitioner's convictions for

premeditated first degree murder and felony murder of Samantha Chrismer, the jury found the following aggravating circumstances beyond a reasonable doubt: (1) the murder was especially heinous, atrocious, or cruel, in that it involved torture or serious physical abuse beyond that necessary to produce death; (2) the murder was committed for the purpose of avoiding, interfering with, or preventing a lawful arrest or prosecution of the Petitioner or another; (3) the Petitioner knowingly committed the murder while having a substantial role in committing first degree murder of Adam Chrismer; and (4) the Petitioner knowingly committed the murder while having a substantial role in committing or attempting to commit kidnapping. See id. (citing T.C.A. § 39-13-204(i)(5), (6), (7)). After finding that these aggravating circumstances outweighed the mitigating circumstances beyond a reasonable doubt, the jury sentenced the Petitioner to death for each conviction, and the trial court merged the felony murder conviction with the premeditated first degree murder conviction regarding Samantha Chrismer. See id. at *34-35. The Petitioner appealed, and this court affirmed the judgments. See id. at *99. The Petitioner's direct appeal is currently pending review by the Tennessee Supreme Court. See State v. Howard Hawk Willis, No. E2012-01313-CCA-R3-DD, 2015 WL 1207859 (Tenn. Crim. App. Mar. 13, 2015), direct death penalty transfer, No. E2012-01313-SC-DDT-DD (Tenn. Apr. 1, 2015).

On December 2, 2014, the Petitioner filed a pro se petition for writ of error coram nobis, alleging that the following newly discovered evidence warranted coram nobis relief:

> (1) Investigator Jimmy Smith's 10/7/02 interview notes of witnesses Daisy Bagby, John Bagby and Debbie Armes. Each of these interviews provide[s] information that at the time of providing the affidavit to the U.S. Attorney for a federal arrest warrant—Tennessee authorities had information from these witnesses that Sam Thomas was alive at the time Petitioner was alleged to have been unlawfully using Sam Thomas's credit card[s]. These interviews were not discovered until December 2013, by the Petitioner.

> (2) Phone call recordings by Kelly Chancey and Marcus Caudel—that witnesse[s] Joy Gadd, Wilda Willis, and Brian Brown knew Sam Thomas was alive at the time Petitioner was using his credit cards—and that this activity was not unusual. These recordings were not discovered until April 2014, by the Petitioner.

The Petitioner asserted in his petition that this newly discovered evidence may have resulted in a different judgment because it invalidated his federal arrest warrant, thereby requiring suppression of his confession to killing the Chrismers that he made while

-3-

incarcerated at the Washington County Jail. The Petitioner claimed he was not at fault in failing to present the newly discovered evidence at the appropriate time because he did not learn of the statements of Daisy Bagby, John Bagby, or Debbie Armes until December 2013 and did not learn of the recordings of Joy Gadd, Wilda Willis, and Brian Brown until April 2014.

An affidavit signed by the Petitioner was attached to the coram nobis petition. In it, the Petitioner asserted that although he had requested the investigative file on the Samuel Thomas murder case in initial discovery, the State of Tennessee did not disclose this file until May 18, 2010, which was shortly before his trial for the Chrismer murders. He claimed that the State's refusal to turn over this file for almost seven years prevented appointed counsel from conducting a meaningful investigation or from using this evidence in suppression motions. He also claimed that the delayed disclosure of this file limited his ability, as a pro se litigant, to use this evidence to suppress his statements and confession. Moreover, he asserted that the State's withholding of this file prevented him from presenting exculpatory evidence at trial, stating:

> The State of Tennessee's withholding of the Samuel Johnson Thomas case file until 5/18/10 denied me the ability to conduct a thorough case investigation and to present exculpatory evidence to the Jury at trial for their consideration, i.e. a letter written by Samantha Chrismer that her husband Adam and her half[-]brother Daniel Foster robbed Sam Thomas and were setting me up for the crime; documents that connect Betty Willis and Adam Chrismer to Adam's mother[']s house; and documents that connect Adam to Betty Willis'[s] hospital room; and documents Betty would set me up for any crime she could. All of this denied me the ability to present a meaningful defense. See Exhibit 1 with sub exhibits Attached Herewith.

The Petitioner also claimed that he was unable to review recorded telephone conversations containing certain exculpatory evidence until April 2014:

> Phone conversations were recorded after March 16, 2010[,] and prior to trial that Kell[y] Chancey was [a] part of. The equipment was supplied by my investigator, Mark Caudel. These calls contained exculpatory evidence. I was unable to review, further investigate, nor prepare these calls for presentation to the Jury for their consideration at trial. [Some examples of exculpatory evidence] are as follows:
>
> a.   A call between Kell[y] Chancey and Wilda Willis Gadd. In this call information shared between them provide[s] proof [that] the people

with Howard Willis on 10/4/02 [at] 10:30 pm in a red jeep, were not Adam and Samantha Chrismer. Wilda Willis Gadd, failed to share this with the prosecution, nor the Jury.

b. In calls with Joy Gadd, although she tried to be evasive at first, she did admit her knowledge of the following:

    i. That Joy saw Howard Willis with Sam Thomas'[s] credit cards [at] Wilda Willis'[s] apartment prior to Sam's disappearance.

    ii. That Joy Gadd stated there was [No Doubt] Wilda Willis knew Howard Willis had Sam Thomas'[s] credit cards prior to his disappearance.

    iii. That Joy's son, Bri[a]n Brown, had seen Howard Willis with Sam's credit cards prior to his disappearance.

    iv. That Joy had additional knowledge that the people with Howard Willis on 10/4/02 were not Adam and Samantha Chrismer.

    v. That Joy Gadd clearly stated Wilda Willis had told so many different stories she did not believe Wilda knew the truth anymore.

The Petitioner stated that "after the Sam Thomas case file was turned over [by the State] and the phone calls recorded, [he] requested the Court provide a short continuance to allow [him] time to complete case investigation, subpoena witnesses and prepare the case for trial." The trial court heard testimony from the Petitioner's investigator that he had been unable to read half of the discovery and was attempting to subpoena out of state witnesses. However, the Petitioner said that despite this testimony, the trial court denied his continuance "and was in a rush to [go to] trial[,]" which violated his ability to present a meaningful defense. Following his conviction and sentencing on October 21, 2010, the trial court appointed attorney James Simmons to represent him on appeal. The Petitioner said he gave James Simmons permission to pick up his case files and bring them to him in prison in August 2010; however, because Simmons had not brought his file to him by November 9, 2010, the Petitioner wrote a letter to the trial court requesting an order for his file. This letter was forwarded to Simmons, who ignored the Petitioner's request. After having some difficulty getting the physical file and a digital copy of the file into the prison, Simmons finally obtained authorization for him to bring some of the legal files to

the Petitioner on February 4, 2013. The Petitioner said that "all of [his] files were not brought to [him] until shortly after November 20, 2013," when the trial court granted Simmons's withdrawal from his case. However, he asserted that it was not until December 2013 that he received the investigative file from the Samuel Thomas case and discovered that "Bradley County Captain Bill Burtt intentionally provided false information to U.S. Attorney Steven Dallassandro [sic] to obtain an arrest warrant in order to investigate, and illegally question [him]." Finally, the Petitioner stated that the referenced phone conversations, which were recorded prior to trial, were not given to him until April 2014 when newly appointed counsel sent them to him. He asserts that the late disclosure of these recorded conversations prevented him from investigating their contents and presenting that evidence to the jury at trial.

The Petitioner also attached an unfiled motion, identical in substance to his November 13, 2009 motion to suppress. This unfiled motion contained 100 exhibits that were nearly identical to the 100 exhibits attached to the November 13, 2009 motion to suppress.

On January 16, 2015, the Washington County Criminal Court summarily dismissed the pro se petition for writ of error coram nobis on the grounds that "the Petitioner is represented by appointed counsel, Mr. James Simmons" and that "this case is still pending in the Court of Criminal Appeals and, therefore, is not final." On January 30, 2015, the Petitioner filed a timely appeal of the summary dismissal of his coram nobis petition.

On June 12, 2015, the Tennessee Supreme Court entered an order declining the Petitioner's request to stay his direct appeal on the basis that his pro se petition for writ of error coram nobis was pending review by the Tennessee Court of Criminal Appeals. See Howard Hawk Willis, No. E2012-01313-SC-DDT-DD (June 12, 2015 order); Cf. State v. Mixon, 983 S.W.2d 661, 672 (Tenn. 1999) (adopting a procedure that on the same day a coram nobis petition is filed in the trial court, the petitioner should also file in the appellate court a motion to stay appellate proceedings pending the trial court's decision on the writ of error coram nobis). In denying the Petitioner's motion to stay the direct appeal, the Tennessee Supreme Court noted that the coram nobis petition was untimely and that even though this petition was filed before the Court of Criminal Appeals issued its opinion regarding the direct appeal, no motion to stay the direct appeal had been filed in the intermediate court.

On June 24, 2015, this court, in response to the Petitioner's pro se motions seeking a stay of his coram nobis appeal and requesting the appointment of counsel, entered an order appointing counsel to the Petitioner for proceedings in the Court of Criminal Appeals regarding the summary dismissal of his coram nobis petition and, after treating

the Petitioner's motion for a stay as a motion to reset the briefing schedule, extended the time for filing the Petitioner's brief. See Howard Hawk Willis, 2015 WL 1207859 (June 24, 2015 order).

Thereafter, the Petitioner filed appellate briefs with the assistance of counsel, arguing that the pro se petition and affidavit articulated two sources of newly discovered evidence that might have resulted in a different judgment at trial:

> (1) Sam Thomas's investigative file—which contains evidence of pre-trial statements implicating a third-party for Chrismer deaths, and

> (2) recorded phone conversations between Kelly [Chancey] and Wilda Willis, in which Wilda admits that the Chrismers were not with [the Petitioner] the night they disappeared.

While the sources of the newly discovered evidence identified by counsel were similar to the sources identified in the Petitioner's pro se petition, the newly discovered evidence itself, namely the evidence of pre-trial statements implicating a third party and Wilda's recorded conversation in which she admitted that the Chrismers were not with the Petitioner the night they disappeared, was drastically different from the newly discovered evidence identified in the Petitioner's pro se coram nobis petition.

In these briefs, the Petitioner made several assertions based on information taken from the affidavit attached to his petition. First, he maintained that the investigative file from the Samuel Thomas case contained evidence implicating Betty Willis, the Petitioner's mother, in the deaths of Adam[1] and Samantha Chrismer because Betty had stated she would set up the Petitioner for any crime she could. He also claimed that the Thomas file contained proof showing that Daniel Foster, Samantha Chrismer's half-brother, had robbed Samuel Thomas and framed the Petitioner for that crime. Finally, he asserted that recorded telephone conversations between Wilda Willis, the Petitioner's ex-wife and a key witness for the State at trial, and Kelly Chancey, the Petitioner's daughter, showed that Wilda knew that Adam and Samantha Chrismer were not the people with the Petitioner in the red Jeep at 10:30 p.m. on October 4, 2002, the day the Chrismers disappeared.

## ANALYSIS

The Petitioner argues that he is entitled to a new trial based upon his "newly discovered evidence," or at a minimum, to an evidentiary hearing on his coram nobis

---

[1] To avoid repetition, we will occasionally refer to individuals by their first names. This court means no disrespect to these individuals.

petition with the assistance of counsel. He asserts that the coram nobis court abused its discretion in summarily dismissing his petition on procedural grounds without taking into account due process considerations, that the procedural grounds on which the coram nobis court relied were erroneous, and that his pro se petition satisfied the coram nobis pleading requirements and, to the extent that it did not, this court should remand the case for an evidentiary hearing given the pro se nature of the petition. The State responds that the petition fails to state a claim for coram nobis relief. Because the Petitioner has failed to show he is entitled to coram nobis relief, we affirm the summary dismissal of the petition.

A petition for writ of error coram nobis is available to criminal defendants based on subsequently or newly discovered evidence. T.C.A. § 40-26-105(a), (b). Coram nobis petitions are governed by Tennessee Code Annotated section 40-26-105(b), which provides:

> The relief obtainable by this proceeding shall be confined to errors dehors the record and to matters that were not or could not have been litigated on the trial of the case, on a motion for a new trial, on appeal in the nature of a writ of error, on writ of error, or in a habeas corpus proceeding. Upon a showing by the defendant that the defendant was without fault in failing to present certain evidence at the proper time, a writ of error coram nobis will lie for subsequently or newly discovered evidence relating to matters which were litigated at the trial if the judge determines that such evidence may have resulted in a different judgment, had it been presented at the trial.

Id. § 40-26-105(b). As the statute indicates, coram nobis review is confined to errors outside the record and to matters that have not been previously litigated. Wlodarz v. State, 361 S.W.3d 490, 499 (Tenn. 2012) (citing T.C.A. § 40-26-105(b)). Specifically, coram nobis relief is limited to "matters that were not or could not have been litigated on the trial of the case, on a motion for a new trial, on appeal in the nature of a writ of error, on writ of error, or in a habeas corpus proceeding." T.C.A. § 40-26-105(b); see Wlodarz, 361 S.W.3d at 510 (Koch, J., concurring in result). This court has stated that coram nobis relief is also not available on matters that were or could have been litigated in a post-conviction proceeding. See Wlodarz, 361 S.W.3d at 510 (Koch, J., concurring in result) (citing George Langford v. State, No. W2006-02765-CCA-R3-PC, 2008 WL 1700228, at *3 (Tenn. Crim. App. Apr. 7, 2008); Kenneth C. Stomm v. State, No. 03C01-9110-CR-00342, 1992 WL 97081, at *1 (Tenn. Crim. App., at Knoxville, May 12, 1992); State v. James D. Yarbrough, No. 01C01-9001-CC-00012, 1990 WL 109107, at *2 (Tenn. Crim. App., at Nashville Aug. 3, 1990), perm. app. denied (Tenn. Oct. 29, 1990)).

To seek coram nobis relief, the petitioner must establish that he or she was "'without fault' in failing to present the evidence at the proper time." Harris v. State, 102 S.W.3d 587, 592-93 (Tenn. 2003). A petitioner is "without fault" if he or she is able to show that "the exercise of reasonable diligence would not have led to a timely discovery of the new information." State v. Vasques, 221 S.W.3d 514, 527 (Tenn. 2007).

Moreover, "a coram nobis petition will not lie where a petitioner was previously aware of the alleged 'newly discovered evidence.'" Wlodarz, 361 S.W.3d at 506 (citations omitted); Harris v. State, 301 S.W.3d 141, 160 (Tenn. 2010) (Koch, J., concurring in part and concurring in result) (To be considered newly discovered evidence, "the evidence must have been unknown to the defendant at the time of trial."). "A narrow exception exists to this requirement, where 'although not newly discovered evidence, in the usual sense of the term,' the "availability" of the evidence 'is newly discovered.'" Harris, 301 S.W.3d at 160-61 (Koch, J., concurring in part and concurring in result) (citations omitted); see, e.g., Taylor v. State, 171 S.W.2d 403, 404-05 (applying this narrow exception in a motion for new trial when one witness was in the hospital and another witness was working outside the state on the trial date and both witnesses were available to testify at a later trial); Misty Jane Brunelle v. State, No. 2010-00662-CCA-R3-PC, 2011 WL 2436545, at *10 (Tenn. Crim. App. June 16, 2011) (recognizing that a petitioner could have sought coram nobis relief when a Department of Children's Services report that was known to the petitioner but sealed at the time of trial later became available). Generally, "subsequently or newly discovered evidence which is simply cumulative to other evidence in the record or serves no other purpose than to contradict or impeach the evidence adduced during the course of the trial will not justify the granting of a petition for the writ of error coram nobis when the evidence, if introduced, would not have resulted in a different judgment." Hart, 911 S.W.2d 371, 375 (Tenn. Crim. App. 1995) (internal citations omitted); see Vasques, 221 S.W.3d at 528 (concluding that impeachment evidence may constitute newly discovered evidence for the purpose of coram nobis relief when it has an effect on the outcome of the proceedings).

The relief sought through a writ of error coram nobis "'is the setting aside of the judgment of conviction and the granting of a new trial.'" Payne v. State, -- S.W.3d -- , No. W2013-01248-SC-R11-PD, 2016 WL 1394199, at *5 (Tenn. Apr. 7, 2016) (quoting Harris, 301 S.W.3d at 150 n.8 (Koch, J., concurring in part and concurring in result) (citing T.C.A. § 40-26-105(c))). "[A] writ of error coram nobis is the only potential remedy for those rare instances in which a petitioner may otherwise be wrongfully convicted of a crime." Wlodarz, 361 S.W.3d at 504. The goal of coram nobis relief "is a reliable determination of the petitioner's criminal liability for the offense with which he was charged based on all of the evidence that should have been made available to the fact-finder at the initial trial." Payne, 2016 WL 1394199, at *5 (emphasis added).

The decision to grant or deny a petition for the writ of error coram nobis rests within the sound discretion of the trial court, and this court's review of this issue is limited to determining whether the trial court abused its discretion. State v. Hall, 461 S.W.3d 469, 496 (Tenn. 2015) (citing Harris, 301 S.W.3d at 144). "A court abuses its discretion when it applies an incorrect legal standard or its decision is illogical or unreasonable, is based on a clearly erroneous assessment of the evidence, or utilizes reasoning that results in an injustice to the complaining party." Wilson v. State, 367 S.W.3d 229, 235 (Tenn. 2012) (citing Wright ex rel. Wright v. Wright, 337 S.W.3d 166, 176 (Tenn. 2011)).

A writ of error coram nobis is an "extraordinary procedural remedy" that "fills only a slight gap into which few cases fall." Mixon, 983 S.W.2d at 672 (citing Penn v. State, 670 S.W.2d 426, 428 (Ark. 1984)); State v. Workman, 111 S.W.3d 10, 18 (Tenn. Crim. App. 2002). It is known more for its denial than its approval. Harris, 102 S.W.3d at 592 n.7 (quoting Mixon, 983 S.W.2d at 666). The purpose of a writ of error coram nobis "'is to bring to the attention of the [trial] court some fact unknown to the court, which if known would have resulted in a different judgment.'" Hart, 911 S.W.2d at 374 (quoting State ex rel. Carlson v. State, 407 S.W.2d 165, 167 (Tenn. 1996)); see Wlodarz, 361 S.W.3d at 506. Moreover, "[t]he evil that the coram nobis statute is aimed at remedying is a conviction based on materially incomplete or inaccurate information." Payne, 2016 WL 1394199, at *6.

In order to evaluate the Petitioner's claims for coram nobis relief, this court must determine (1) whether he has asserted these claims in a timely manner, and if not, (2) whether he has shown he is entitled to equitable tolling of the statute of limitations, and (3) if the petition is timely or the petitioner is entitled to equitable tolling, whether the petition is substantively adequate. See Harris, 301 S.W.3d at 155 (Koch, J., concurring in part and concurring in result).

**I. Erroneous Procedural Grounds.** Initially, we will address the Petitioner's claim that the coram nobis court summarily dismissed his petition on erroneous grounds without holding an evidentiary hearing or fully evaluating his claims. He asserts that the court's incorrect assessment of the record and the court's mistaken interpretation of the law constitute an abuse of discretion requiring reversal. See Koon v. U.S., 518 U.S. 81, 100 (1996) (stating that a district court abuses its discretion when it makes an error of law); Teresa Deion Smith Harris v. State, No. W2014-01020-CCA-R3-ECN, 2015 WL 226091, at *1 (Tenn. Crim. App. Jan. 16, 2015) ("A trial court abuses its discretion when it applies incorrect legal standards, reaches an illogical conclusion, bases its decision on a clearly erroneous assessment of the evidence, or employs reasoning that causes an injustice to the complaining party."). The Petitioner also asserts that because he was sentenced to death, "a hearing is warranted to determine the extent to which the newly

discovered evidence may have affected the judgment at trial."

The two grounds relied on by the court in summarily dismissing the petition were that the Petitioner was represented by counsel at the time he filed the pro se petition and that the Petitioner's case was not final. While the State concedes that the trial court's grounds for dismissal were erroneous, it nevertheless argues that the court's summary dismissal of the petition should be affirmed because the petition fails to state a claim for coram nobis relief. We conclude that although the court's grounds for summary dismissal were erroneous, the Petitioner is not entitled to relief.

The Petitioner asserts that the court's first ground, that he was represented by counsel at the time he filed his pro se coram nobis petition, was based on "a clearly erroneous assessment of the record because James Simmons never represented [him] in any legal action other than the direct appeal." He claims that because court appointed counsel must represent a defendant only through the initial appellate review and because "a writ of error coram nobis is a <u>new</u> action filed to <u>vacate</u> a trial court's final judgment, not <u>review</u> that judgment," a defendant, who is represented by court appointed counsel in direct appeal proceedings, may file a pro se petition for writ of error coram nobis without violating the rule prohibiting a represented defendant from filing a pro se motion." <u>See</u> T.C.A. § 40-14-203 ("Appointed counsel is required to represent the defendant only through the initial appellate review and is not required to pursue the matter through a second tier discretionary appeal by applying to the supreme court for writ of certiorari."); <u>Moore v. Moore</u>, 431 S.W.2d 754, 755 (Tenn. 1968) ("A suit for writ of error coram nobis is a new action to vacate and annul a judgment" and "is not an action to review a judgment[.]"); <u>Mixon</u>, 983 S.W.2d at 663 ("[I]n most instances, to be timely, a petition for writ of error coram nobis generally will be filed during the pendency of an appeal as of right."). He adds that the Washington County Criminal Court entered an order terminating Simmons's obligation to represent him on direct appeal on November 20, 2013, and that he did not filed his pro se coram nobis petition until December 2, 2014, more than one year later. We note that the right to counsel and the right to self-representation are alternatives, meaning that a defendant may assert one or the other but not both. <u>State v. Hester</u>, 324 S.W.3d 1, 30 (Tenn. 2010) (citing <u>Lovin v. State</u>, 286 S.W.3d 275, 284 (Tenn. 2009); <u>State v. Small</u>, 988 S.W.2d 671, 673 (Tenn. 2010)); <u>see</u> <u>State v. Burkhart</u>, 541 S.W.2d 365, 371 (Tenn. 1976). However, because counsel in this case was appointed to represent the Petitioner in his direct appeal, we conclude that the Petitioner was not precluded from filing his pro se petition for writ of error coram nobis. Therefore, we agree with the Petitioner that this was an erroneous ground for summary dismissal.

The Petitioner also asserts that the court's second ground, that his petition was premature because the direct appeal was pending review before the Tennessee Court of

Criminal Appeals, was "rooted in an erroneous assessment of Tennessee law." He notes that a final judgment in his case was entered on June 5, 2012, when the trial court entered its order denying his motion for new trial, and that in light of this final judgment, the coram nobis court made an error of law requiring reversal. See Koon, 518 U.S. at 100. As to this second ground, we recognize that a coram nobis petition must be filed within one year of the trial court issuing a final judgment on the merits of the case. Mixon, 983 S.W.2d at 663. A judgment is final for coram nobis purposes "thirty days after entry of the judgment in the trial court if no post-trial motion is filed, or upon entry of an order disposing of a timely filed post-trial motion." Mixon, 983 S.W.2d at 663; see Harris, 301 S.W.3d at 144. Moreover, a pending direct appeal does not alter the finality of a trial court judgment because "a timely petition for writ of coram nobis will almost always be filed while an appeal is pending." Mixon, 983 S.W.2d at 671. Because the coram nobis petition in this case was not premature, we conclude that this, too, was an erroneous ground for summary dismissal.

Although the coram nobis court's grounds for summary dismissal were erroneous, we nevertheless conclude that the Petitioner is not entitled to relief. As we will explain, the petition was untimely, due process does not require tolling of the statute of limitations, and the petition in this case is substantively deficient. For these reasons, we affirm the coram nobis court's judgment.

**II. Statute of Limitations.** We must first address whether the Petitioner filed his coram nobis petition more than one year after the judgments of conviction became final. See T.C.A. § 27-7-103; Wilson, 367 S.W.3d at 233; Mixon, 983 S.W.2d at 668. Whether a claim is barred by an applicable statute of limitations is a question of law, which this court reviews de novo. Harris, 301 S.W.3d at 144 (citing Brown v. Erachem Comilog, Inc., 231 S.W.3d 918, 921 (Tenn. 2007)). The State bears the burden of raising the statute of limitations as an affirmative defense. Wilson, 367 S.W.3d at 234 (citing Harris, 301 S.W.3d at 144).

In this case, the Petitioner's judgments became final on June 5, 2012, the date the order denying his motion for new trial was entered. Consequently, the statute of limitations would have expired on June 5, 2013, more than a year and a half before the Petitioner filed his pro se petition for writ of error coram nobis.

Although the petition in this case was filed well beyond the one-year statute of limitations for coram nobis relief, it does not appear that the affirmative defense of the statute of limitations was raised by the State. The record shows no filings in this regard, and the order summarily dismissing the petition shows that the coram nobis court did not deny the Petitioner relief based on the petition's untimeliness. The coram nobis petition was filed on December 2, 2014, and the court entered its order summarily dismissing the

petition on January 16, 2015, just forty-five days later. Nevertheless, the Petitioner raises the issue of due process tolling in his pro se petition when he claims he was not aware of the interview notes until December 2013 and the recorded phone conversations until April 2014, well after the expiration of the statute of limitations. The Petitioner also raises the issue of due process tolling in his appellate brief, which was filed with the assistance of counsel. Surprisingly, the State does not argue in its brief that the petition was untimely or that the statute of limitations should not be tolled; instead, it merely contends that the petition failed to state a claim for coram nobis relief.[2] While the State has the burden of raising the statute of limitations as an affirmative defense, the State's failure to do so does not inevitably mean that this issue is waived. See Wilson, 367 S.W.3d at 234; see also Harris, 301 S.W.3d at 144-45 (holding that the State's failure to raise the untimeliness of the coram nobis petition as an issue on appeal does not preclude this court from determining whether the petition is barred by the statute of limitations); Cf. Harris, 301 S.W.3d at 153 & n.17 (Koch, J., concurring in part and concurring in result) (stating that the statute of limitations issue should no longer be characterized as an affirmative defense because compliance with the timely filing requirement is an essential element of a coram nobis claim). Furthermore,

> Failure to raise the statute as an affirmative defense does not result in waiver "if the opposing party is given fair notice of the defense and an opportunity to rebut it" because "the purpose of the specific pleading requirement is to prevent a party from raising a defense at the last possible moment and thereby prejudicing the opposing party's opportunity to rebut the defense."

Wilson, 367 S.W.3d at 234 (quoting Sands v. State, 903 S.W.2d 297, 299 (Tenn. 1995)). Because the Petitioner raised the issue of the statute of limitations in his pro se petition and his appellate briefs, he cannot argue that he was prejudiced by failing to receive fair notice of this defense or by not having an opportunity to rebut this defense. See Wilson, 367 S.W.3d at 234.

**III. Due Process Tolling.** Next, we determine whether the Petitioner has shown he is entitled to equitable tolling of the statute of limitations. Although the petition in this case was untimely, due process considerations may toll the statute of limitations. Workman v. State, 41 S.W.3d 100, 103 (Tenn. 2001). Due process requires the tolling of a statute of limitations period when a petitioner would otherwise be denied "'an opportunity for the presentation of claims at a meaningful time and in a meaningful manner.'" Id. at 102 (quoting Burford v. State, 845 S.W.2d 204, 208 (Tenn. 1992)); see Wlodarz, 361 S.W.3d at 499. "[D]ue process considerations . . . apply with even greater

---

[2] We feel that the exceptionally abbreviated analysis utilized by the State in this capital case is inadequate in light of Wilson, 367 S.W.3d 229 (Tenn. 2012), and Harris, 301 S.W.3d 141 (Tenn. 2010).

force when the statute of limitations is being applied in a capital case to bar a claim that newly discovered evidence may prove that the defendant is actually innocent of the capital crime of which he was convicted." Workman, 41 S.W.3d at 101 (footnote omitted); see Harris, 301 S.W.3d at 145. We recognize that due process considerations are of particular importance in the Petitioner's case because he received two sentences of death.

In determining whether due process requires tolling of the statute of limitations, this court must weigh the Petitioner's interest in obtaining a hearing on the grounds of newly discovered evidence against the State's interest in preventing stale and groundless claims. Harris, 301 S.W.3d at 145 (citing Workman, 41 S.W.3d at 103). To balance these interests, courts should use the following three-step analysis:

> (1) determine when the limitations period would normally have begun to run;
>
> (2) determine whether the grounds for relief actually arose after the limitations period would normally have commenced; and
>
> (3) if the grounds are "later-arising," determine if, under the facts of the case, a strict application of the limitations period would effectively deny the petitioner a reasonable opportunity to present the claim.

Wilson, 367 S.W.3d at 234 (quoting Sands, 903 S.W.2d at 301).

Applying this analysis, we have already determined that the statute of limitations period would normally have begun to run on June 5, 2012. We must next determine whether the Petitioner's grounds for relief actually arose after the limitations period normally would have commenced. In the pro se petition, the Petitioner identifies two pieces of "newly discovered evidence" entitling him to relief: (1) notes from interviews with Daisy Bagby, John Bagby, and Debbie Armes showing that, at the time the affidavit was presented in order to obtain the federal arrest warrant, Sam Thomas was alive when the Petitioner was alleged to have been unlawfully using Thomas's credit cards; and (2) phone call recordings showing that witnesses Joy Gadd, Wilda Willis, and Brian Brown knew Sam Thomas was alive at the time the Petitioner was using his credit cards and that the Petitioner's use of Thomas's credit cards was not unusual.

Regarding the interview notes, the Petitioner claims he did not become aware of them until he received the investigatory file in the Sam Thomas murder case in December 2013. However, in his affidavit attached to the petition, he acknowledges that the State provided the investigative files in the Thomas murder case to him on May 18, 2010, prior

-14-

to his trial.  In fact, the Petitioner states that he requested a continuance of his trial based on the State's disclosure of the Thomas file, which the trial court denied.  Because the Thomas file was originally provided to the Petitioner on May 18, 2010, and the statute of limitations period commenced on June 5, 2012, we conclude that this ground for relief did not arise after the commencement of the limitations period.  Given that this first ground was not "later-arising," a strict application of the limitations period would not effectively deny the Petitioner a reasonable opportunity to present this claim.  Therefore, we conclude that the Petitioner's claim based on the interview notes is time-barred because it was filed after the expiration of the statute of limitations and because due process considerations do not require equitable tolling.

As for the recorded phone calls, the Petitioner claims that he did not become aware of them until April 2014, when newly appointed counsel brought them to him in a form he could review.  However, he acknowledges in his affidavit that his investigator assisted in recording these phone calls after March 16, 2010, and prior to trial, which means that the recordings were in the defense's possession prior to trial.  Moreover, the record from the Petitioner's direct appeal shows that the Petitioner presented this "newly discovered evidence" for the first time in his November 13, 2009 motion to suppress all statements made to law enforcement and their agents.

In the November 13, 2009 motion, the Petitioner claimed that Captain Bill Burtt of the Bradley County Sheriff's Department "intentionally provid[ed] information [regarding the Petitioner's illegal use of Thomas's credit cards] that was known to him to be false and misleading to a U.S. Attorney to obtain the bond revocation."  The Petitioner maintained that Samuel Thomas, his stepfather, gave him the credit cards and $4600.00 in cash some time prior to September 5, 2002, the last day anyone had contact with Thomas. The Petitioner asserted that he had told family members and others that Thomas had given him the credit cards and cash prior to Thomas's disappearance.  The Petitioner also asserted that two recorded phone calls showed that Wilda Willis and Joy Gadd knew that Thomas had given the credit cards to him before Thomas disappeared on September 5, 2002.  He claimed that Wilda Willis admitted  the Petitioner's lawful possession of the credit cards to "many family members and others" and made such admissions during "recorded phone conversations known to both Bradley County and Washington County officials."  He also stated that during an interview on October 8, 2002, the Petitioner told Detective Efaw and Captain Burtt that Wilda Willis, Kelly Chancey, Joy Gadd, Brian Brown, and Adam and Samantha Chrismer were present when he used Thomas's credit cards and that he stopped using the credit cards when Thomas was reported missing.

Based on the information included in the November 13, 2009 motion to suppress, the Petitioner was well aware at the time of his trial that Joy Gadd, Wilda Willis, and Brian Brown knew that he lawfully used Thomas's credit cards.  At the time that the

-15-

coram nobis court summarily dismissed the Petitioner's coram nobis petition, it was well-aware that the Petitioner had tried to use this same evidence in his November 13, 2009 motion to suppress. Recognizing that the Petitioner was aware of these witnesses when he filed his November 13, 2009 motion to suppress and that the statute of limitations period commenced on June 5, 2012, we conclude that the second ground for relief did not arise after the commencement of the limitations period. Given that this second ground was not "later-arising," a strict application of the limitations period would not effectively deny the Petitioner a reasonable opportunity to present this second claim. Accordingly, we conclude that this second claim is also time-barred because it was filed after the expiration of the statute of limitations and because due process considerations do not require equitable tolling.

Because we have concluded that due process considerations did not toll the statute of limitations for either of the grounds raised by the Petitioner in his pro se petition, we affirm the summary dismissal of coram nobis relief in this case. However, we recognize the importance of thoroughly evaluating the Petitioner's claims because this is a capital case. Therefore, we will also consider whether the petition in this case was substantively adequate.

**IV. <u>Substantive Adequacy of the Petition.</u>** The Petitioner contends that his pro se petition satisfies the coram nobis pleading requirements, and to the extent that it does not, he urges this court to hold his petition to less stringent standards because it was filed pro se. As we have noted, the State contends that the Petitioner fails to state a claim for coram nobis relief. We conclude that the petition is substantively deficient.

The Tennessee Supreme Court has provided a procedure for trial courts to follow when considering a coram nobis petition:

> [T]he trial judge must first consider the newly discovered evidence and be "reasonably well satisfied" with its veracity. If the defendant is "without fault" in the sense that the exercise of reasonable diligence would not have led to a timely discovery of the new information, the trial judge must then consider both the evidence at trial and that offered at the coram nobis proceeding in order to determine whether the new evidence <u>may have</u> led to a different result.

<u>Vasques</u>, 221 S.W.3d at 527. In determining whether the new evidence may have led to a different result, the appropriate analysis is "'whether a reasonable basis exists for concluding that had the evidence been presented at trial, the result of the proceedings might have been different.'" <u>Id.</u> (quoting <u>State v. Roberto Vasques</u>, No. M2004-00166-CCA-R3-CD, 2005 WL 2477530, at *13 (Tenn. Crim. App. Oct. 7, 2005), <u>aff'd</u>,

-16-

<u>Vasques</u>, 221 S.W.3d 514 (Tenn. 2007)). This standard "requires determination of both the relevance and the credibility of the discovered information" and "upholds the traditional, discretionary authority of our trial judges to consider the new evidence in the context of the trial, to assess its veracity and its impact upon the testimony of the other witnesses, and to determine the potential effect, if any, on the outcome." <u>Id.</u> at 527-28.

A petition for writ of error coram nobis must meet the following requirements:

> "The . . . petition must be in writing and (1) must describe with particularity the nature and substance of the newly discovered evidence and (2) must demonstrate that this evidence qualifies as "newly discovered evidence." In order to be considered "newly discovered evidence," the proffered evidence must be (a) evidence of facts existing, but not yet ascertained, at the time of the original trial, (b) admissible, and (c) credible. In addition to describing the form and substance of the evidence and demonstrating that it qualifies as "newly discovered evidence," the [petitioner] must also demonstrate with particularity (3) why the newly discovered evidence could not have been discovered in a more timely manner with the exercise of reasonable diligence; and (4) how the newly discovered evidence, had it been admitted at trial, may have resulted in a different judgment."

<u>Payne</u>, 2016 WL 1394199, at *4 (quoting <u>Harris</u>, 301 S.W.3d at 152 (Koch, J., concurring in part and concurring in result) (footnotes omitted)). A coram nobis petition "must be 'as specific and certain as the nature of the error will permit.'" <u>Harris</u>, 301 S.W.3d at 150 (Koch, J., concurring in part and concurring in result) (quoting <u>Memphis St. Ry. v. Johnson</u>, 88 S.W. 169, 171 (Tenn. 1905)). "Specificity is required for the purpose of assuring (1) that the trial court and the opposing party are informed precisely of the error or errors being relied upon and (2) to assure the appellate courts that the trial court was made aware of the alleged error and was given an opportunity to consider and pass on it." <u>Id.</u> (citing <u>Ferguson v. State</u>, 61 S.W.2d 467, 468 (Tenn. 1933); <u>State v. McKinney</u>, 603 S.W.2d 755, 760 (Tenn. Crim. App. 1980); W. MARK WARD, TENNESSEE CRIMINAL TRIAL PRACTICE § 31:1 (2008-2009)).

Affidavits, in support of the coram nobis petition, should be filed with the petition or at some point prior to a hearing. <u>Hart</u>, 911 S.W.2d at 375 (citations omitted). "An affidavit, like the testimony of a witness, must be relevant, material and germane to the grounds raised in the petition; and the affiant must have personal knowledge of the statements contained in the affidavit." <u>Id.</u> (citing <u>State v. Byerley</u>, 658 S.W.2d 134, 141 (Tenn. Crim. App. 1983)). An affidavit that fails to meet these requirements "will not justify the granting of an evidentiary hearing since the information contained in the affidavits, taken as true, would not entitle the petitioner to relief." <u>Id.</u> (citing <u>State v.</u>

<u>Todd</u>, 631 S.W.2d 464, 466-67 (Tenn. Crim. App. 1981)). If an affidavit is sufficient, and therefore justifies an evidentiary hearing, then the coram nobis court should not determine the merits of the petition based on the strength of the affidavits alone. <u>Id.</u> (citing <u>Hicks v. State</u>, 571 S.W.2d 849, 852 (Tenn. Crim. App. 1978)).

Coram nobis claims can be based on a variety of grounds:

The grounds for seeking a petition for writ of error coram nobis are not limited to specific categories, as are the grounds for reopening a post-conviction petition. Coram nobis claims may be based upon any "newly discovered evidence relating to matters litigated at the trial" so long as the petitioner also establishes that the petitioner was "without fault" in failing to present the evidence at the proper time. Coram nobis claims therefore are singularly fact-intensive. Unlike motions to reopen, coram nobis claims are not easily resolved on the face of the petition and often require a hearing.

<u>Harris</u>, 102 S.W.3d at 592-93. However, like habeas corpus proceedings, evidentiary hearings are not required by statute in every coram nobis proceeding. <u>See</u> <u>Harris</u>, 301 S.W.3d at 153-54 (Koch, J., concurring in part and concurring in result) (noting that evidentiary hearings on coram nobis petitions need only be conducted when they are essential and that petitions may be dismissed if the averments in the petition are insufficient to warrant relief); <u>see also</u> <u>Clarence D. Schreane v. State</u>, No. E2012-01202-CCA-R3-PC, 2013 WL 173193, at *7 (Tenn. Crim. App. Jan. 16, 2013) (citing <u>Richard Hale Austin v. State</u>, No. W2005-02591-CCA-R3-CO, 2006 WL 3626332, *6 (Tenn. Crim. App. Dec. 13, 2006)). A habeas corpus petition or a coram nobis petition may be dismissed without a hearing and without the appointment of counsel if the petition fails to allege facts showing the petitioner is entitled to relief. <u>See</u> <u>Clarence D. Schreane</u>, 2013 WL 173193, at *7 (citing <u>Richard Hale Austin</u>, 2006 WL 3626332, *6); <u>see also</u> T.C.A. § 40-14-204 (stating that appointment of counsel in an error coram nobis proceeding is left to the discretion of the trial court). Moreover, this court may affirm the dismissal of a petition for writ of coram nobis on erroneous procedural grounds if the record establishes that petitioner is not entitled to coram nobis relief based on alternate grounds. <u>See</u> <u>Leroy Johnson v. State</u>, No. W2014-01993-CCA-R3-ECN, 2015 WL 4608341, at *2 (Tenn. Crim. App. Aug. 3, 2015) (affirming summary dismissal of the petition, despite coram nobis court's erroneous finding that the petition was untimely, because the petitioner did not allege newly discovered evidence entitling him to coram nobis relief); <u>Daniel Lee Draper v. State</u>, No. E2009-00952-CCA-R3-CD, 2010 WL 5343193, at *4-6 (Tenn. Crim. App. Dec. 21, 2010) (affirming summary dismissal of the coram nobis petition, despite coram nobis court's erroneous finding that the petition was untimely, because the petitioner failed to present new evidence).

The Petitioner asks us to excuse any deficiencies in his petition because he is a pro se litigant. We recognize that pro se petitions are "'held to less stringent standards than formal pleadings drafted by lawyers'" and that "'the test is whether it appears beyond doubt that the [petitioner] can prove no set of facts in support of his claim which would entitle him to relief.'" Carter v. Bell, 279 S.W.3d 560, 568 (Tenn. 2009) (quoting Swanson v. State, 749 S.W.2d 731, 734 (Tenn. 1988)); see Young v. Barrow, 130 S.W.3d 59, 63 (Tenn. Ct. App. 2003) (Pro se litigants are given "a certain amount of leeway in drafting their pleadings and briefs."). However, a pro se litigant generally must follow the same procedural rules as a litigant represented by counsel. Carter, 279 S.W.3d at 568 (citing Swanson, 749 S.W.2d at 735); see Young, 130 S.W.3d at 63 ("[T]he courts must not excuse pro se litigants from complying with the same substantive and procedural rules that represented parties are expected to observe."). "Even though the courts cannot create claims or defenses for pro se litigants where none exist, they should give effect to the substance rather than the form or terminology, of a pro se litigant's papers." Young, 130 S.W.3d at 63 (citations omitted).

Initially, we must consider whether the Petitioner can use a coram nobis petition to relitigate a suppression motion. As we previously noted, the Petitioner filed several motions to suppress that were denied by the trial court, and the denial of these suppression motions was affirmed on direct appeal. See Howard Hank Willis, 2015 WL 1207859, at *58-66. Because the Petitioner's confession was deemed admissible, he may not seek coram nobis relief on this basis. Even if the suppression of the Petitioner's confession had the potential to affect his judgment for the purposes of coram nobis relief, we conclude that the petition is substantively deficient when held to less stringent standards than pleadings drafted by lawyers. The Petitioner's claim that the interview notes and the recorded phone conversations would have shown that his confession and statements were the result of an invalid arrest warrant is unpersuasive. See Clarence D. Schreane, 2013 WL 173193, at *8 (affirming the trial court's dismissal of the petition, in part, because the purported newly discovered evidence failed to corroborate the petitioner's claim that his statement was involuntary and should be suppressed because of the promises made by police at the time he gave his statement). The Petitioner's bare allegation that certain witnesses were aware that the Petitioner was using Thomas's credit cards while Thomas was alive does not mean that the Petitioner was not committing credit card fraud. Finally, this court has repeatedly held that a petition for writ of coram nobis cannot be used to relitigate a suppression motion. See Timothy L. Jefferson v. State, No. M2014-00756-CCA-R3-ECN, 2015 WL 2128606, at *8 (Tenn. Crim. App. May 6, 2015); Daniel Lee Draper, 2010 WL 5343193, at *5.

The petition also shows that the Petitioner failed to present newly discovered evidence entitling him to coram nobis relief. We have already noted that the Petitioner acknowledged in his affidavit that he was given the investigative file containing interview

notes of witnesses Daisy Bagby, John Bagby, and Debbie Armes on May 18, 2010, prior to his trial. Consequently, this proof does not constitute "newly discovered evidence." See Daniel Lee Draper, 2010 WL 5343193, at *5 (concluding that documents possessed by the defense prior to petitioner's guilty plea were not newly discovered evidence within the meaning of the coram nobis statute). Aside from it not being newly discovered, this investigative file would not have been admissible pursuant to Tennessee Rule of Evidence 803(8). As for the recorded phone calls, the Petitioner first presented the argument that witnesses Joy Gadd, Wilda Willis, and Brian Brown knew he was using Thomas's credit cards while Thomas was alive in his November 13, 2009 motion to suppress. As we previously recognized, newly discovered evidence that is cumulative to the other evidence in the record will not justify coram nobis relief when the evidence, if introduced, would not have resulted in a different judgment. See Hart, 911 S.W.2d at 375. The Petitioner also admits in his affidavit that these phone calls were recorded by his investigator prior to trial. For these reasons, the interview notes and the phone call recordings do not constitute newly discovered evidence.

The Petitioner also has not shown that he was without fault in failing to present the newly discovered evidence at the appropriate time. While the allegations in the petition were more appropriate for a suppression motion, the petition provides no explanation excusing him from failing to present this evidence at trial. It also contains no facts showing that his failure to present this "newly discovered evidence" was not because of his own negligence. Consequently, he cannot claim that he was without fault in failing to present the evidence sooner.

Finally, the Petitioner has failed to show how the newly discovered evidence, had it been admitted at trial, may have resulted in a different judgment. At trial, the proof of the Petitioner's guilt was overwhelming. The Petitioner confessed to Wilda Willis that he "blew [the victims'] brains out" at the home of his mother, Betty Willis; cut off Adam Chrismer's head and hands and threw them in a lake close to Devault Bridge; and put Samantha Chrismers's body and the rest of Adam Chrismers's body in a storage unit. Willis, 2015 WL 1207859, at *14. The Petitioner told Wilda where to find the chainsaw used to sever Adam's head and hands, and officers later found the chainsaw in the area described by the Petitioner. See id. at *15. Adam's head and hands were found in Boone Lake. See id. at *3, *5, *8-9. Later, officers found Samantha's body and the remainder of Adam's body in a storage unit rented by Betty. See id. at *7. Both victims died of gunshot wounds to the head. See id. at *9-10. The gun used to shoot the victims was found close to Betty's home. See id. at *19, *27. A blue tarp in the storage unit with the victims' bodies contained the Petitioner's thumbprint. See id. Numerous objects from Betty's home, including carpet and rope, were found inside the storage unit where the victims' bodies were found. See id. at *20-21. Given the Petitioner's confession to the Chrismer murders as well as the other corroborating evidence of his guilt, the Petitioner

has failed to show that evidence regarding his use of Thomas's credit cards before Thomas's disappearance may have resulted in a different judgment had this evidence been admitted at his previous trial. For all of these reasons, we conclude that the coram nobis court did not abuse its discretion in summarily dismissing the petition in light of the petition's substantive deficiencies.

**V. <u>Newly Discovered Evidence Identified by Counsel in Brief.</u>** In his pro se petition, the Petitioner identified the following newly discovered evidence: (1) the interview notes of witnesses Daisy Bagby, John Bagby and Debbie Armes showing that Sam Thomas was alive at the time Petitioner was alleged to have been unlawfully using Sam Thomas's credit card, which were discovered in the investigative file in the Samuel Thomas case in December 2013, and (2) the phone call recordings showing that witnesses Joy Gadd, Wilda Willis, and Brian Brown knew Sam Thomas was alive at the time Petitioner was using his credit cards and that the Petitioner's use of the cards was not unusual, which were discovered in April 2014. However, in his appellate brief filed with the assistance of counsel, the Petitioner articulates two sources of newly discovered evidence that might have resulted in a different judgment at trial:

> (1) Sam Thomas's investigative file—which contains evidence of pre-trial statements implicating a third-party for Chrismer deaths, and

> (2) recorded phone conversations between Kell[y] [Chancey] and Wilda Willis, in which Wilda admits that the Chrismers were not with [the Petitioner] the night they disappeared.

While the sources of the evidence identified by counsel are similar to the sources identified in the Petitioner's pro se petition, the newly discovered evidence itself, namely the evidence of pre-trial statements implicating a third party and Wilda's recorded conversation in which she admitted that the Chrismers were not with the Petitioner the night they disappeared, is distinct from the newly discovered evidence specified in the Petitioner's pro se coram nobis petition, most notably because this alternate evidence is exculpatory in nature.

Petitioner's counsel was appointed by this court after the Petitioner appealed the summary dismissal of his petition. While we recognize that counsel was appointed for the purpose of assisting the Petitioner on appeal, it is clear that counsel has attempted to reframe the "newly discovered evidence" that is the subject of the Petitioner's coram nobis claim. The pro se petition states that "Petitioner seeks a new trial, wherein the suppression issue will be relitigated using the newly discovered evidence" or alternatively, "Petitioner seeks to relitigate the suppression issue using the newly discovered evidence, which may then be the basis for a new trial." The Petitioner asserts

that the newly discovered evidence in his petition will invalidate his arrest warrant and result in the suppression of his statements. In working on this case, appointed counsel may have assumed that reframing the "newly discovered evidence" based on information in the Petitioner's affidavit was permissible given that counsel was unable to file an amended coram nobis petition in the trial court. In addition, he may have believed that reframing the "newly discovered evidence" would increase the likelihood of success on appeal. Nevertheless, we believe that counsel was bound by the "newly discovered evidence" so clearly identified by the Petitioner in his pro se petition. See Harris, 301 S.W.3d at 150 (Koch, J., concurring in part and concurring in result) (stating that "the [coram nobis] petition itself embodies the best case the petitioner has for relief from the challenged judgment [and that] the fate of the petitioner's case rests on the ability of the petition to demonstrate that the petitioner is entitled to the extraordinary relief that the writ provides").

Even if we give the Petitioner the benefit of the "newly discovered evidence" identified by appointed counsel, the Petitioner is not entitled to coram nobis relief. The Petitioner through counsel devotes a single paragraph, consisting of five sentences, to explain how the alternate "newly discovered evidence" may have resulted in a different judgment at trial. He claims that the pretrial statements implicating third-party guilt as well as the proof he was not with the victims the night they disappeared "raises more than a 'possibility' that [he] did not commit the crimes for which he was sentenced to death." He also asserts that his new evidence could be used to impeach the State's witnesses, especially Wilda Willis, who provided key information implicating him in the murders to the State.

As for the investigative file, which the Petitioner claims contains evidence of pre-trial statements implicating a third-party for Chrismer deaths, we have already concluded that the Petitioner received this file prior to trial. Consequently, this evidence is not newly discovered evidence. Moreover, we cannot conclude that this evidence may have resulted in a different result at trial had it been introduced. As we have already recognized, the proof at trial of the Petitioner's guilt was overwhelming.

As for the recorded telephone conversations in which Wilda Willis admits that the Chrismers were not with the Petitioner the night they disappeared, the Petitioner claims that he did not receive this evidence until April 2014. However, he admits in his affidavit that these phone calls were recorded by his investigator prior to trial. Even if we give the Petitioner the benefit of the doubt and conclude that the affidavit, though not the petition, "contains sufficient specific factual averments which, if true, make out a prima facie basis for invocation of the equitable tolling doctrine," see Harris, 301 S.W.3d at 159 (Koch, J., concurring in part and concurring in result), we simply cannot conclude that this proof may have resulted in a different judgment had it been presented at trial. We have already

-22-

recognized that "newly discovered evidence" that is cumulative to the other proof in the record or serves no other purpose than to contradict or impeach the evidence at trial will not justify coram nobis relief when the evidence, if presented, would not have resulted in a different judgment. See Hart, 911 S.W.2d at 375; Vasques, 221 S.W.3d at 528. At trial, Patty Leming, Samantha Chrismer's mother, testified that she saw Samantha for the last time on the night of October 4, 2002, at a Pizza Hut located on the border of Chattanooga, Tennessee, and Georgia. She also testified that she thought she saw the Petitioner in a red Jeep in the parking lot of the Pizza Hut that night, that Adam Chrismer came into the Pizza Hut and told Samantha, "Howard said, let's go," and that Adam and Samantha exited the restaurant and presumably left with the Petitioner. Willis, 2015 WL 1207859, at *2. In addition, Wilda Willis testified at trial that on October 4, 2002, the Petitioner "came to her house with two other people in Betty Willis's red Jeep." Id. at *13. Wilda stated that "because it was late in the evening and she was in a hurry, she did not pay attention to the two people with [the Petitioner]." Id. However, she noticed that "a female appeared to be in the Jeep and that a young man was standing outside the vehicle." Id. On cross-examination, Wilda stated that "the female in the Jeep covered her head when Wilda walked outside." Id. at *16. She said that "the female appeared to have blonde hair but noted that it was dark outside." Id. After considering the evidence provided by Patty Lemming and Wilda Willis at trial, it is clear that the Petitioner's newly discovered evidence, namely Wilda's statement that the Chrismers were not with the Petitioner the night they disappeared, serves no purpose other than to contradict the evidence presented at trial and would not have resulted in a different judgment had it been presented at the previous trial. Moreover, this evidence would not have resulted in a different judgment, especially in light of the overwhelming evidence of the Petitioner's guilt at trial. Therefore, even if we give the Petitioner the benefit of the alternate "newly discovered evidence" suggested by counsel, he is not entitled to coram nobis relief.

After evaluating both the Petitioner's and appointed counsel's claims of newly discovered evidence, we conclude that the Petitioner is not entitled to relief. Given the pro se nature of the petition, we have carefully examined the petition, the affidavit, and all attachments and conclude that the Petitioner has failed to present any newly discovered evidence entitling him to coram nobis relief.

## CONCLUSION

Based on the record and arguments of the parties, we conclude that the trial court did not abuse its discretion in summarily dismissing the petition for writ of error coram nobis. Therefore, the judgment of the coram nobis court is affirmed.

_____
CAMILLE R. McMULLEN, JUDGE

-23-